UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY NELS FIEGER,

        Plaintiff,

                                            Case Number 08-14125
v.                                      Honorable David M. Lawson

FEDERAL ELECTION COMMISSION,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff in this case, Geoffrey Nels Fieger, filed the present action under the Freedom of Information Act to compel the production of certain documents by the Federal Election Commission (FEC). The documents related to communications between that agency and Executive Branch officials that concerned possible violations of the Federal Election Campaign Act by Fieger's law firm and its members and employees. The defendant has filed a motion for summary judgment alleging that the Court lacks subject-matter jurisdiction due to the named plaintiff's lack of standing; the defendant's search for records was adequate under the FOIA because it made a good faith effort to conduct a search for the requested records and has disclosed all non-exempt portions of records responsive to the FOIA requests; documents mentioning the Fieger firm only in passing were not responsive and non-disclosure of them was justified; and other documents withheld fit within exemptions in the statute. The Court heard oral argument on the motion on February 24, 2010. The Court now finds the jurisdictional issue dispositive; the motion must be granted and the case dismissed, because the documents were not requested by or on behalf of Fieger, the named plaintiff, and therefore he has no standing to complain about their non-production.

I.

On November 30, 2005, over 100 federal agents raided the law offices of Fieger, Fieger, Kenney & Johnson, P.C. in Southfield, Michigan and executed search warrants at the homes of several of the firm's employees in an effort to find evidence of violations of the Federal Elections Campaign Act. A number of firm personnel were interrogated and records were seized. In August 2008, the law firm's principal owners, plaintiff Geoffrey Fieger and his partner Vernon Johnson, were indicted for making illegal campaign contributions to a candidate in the 2004 presidential primary election. Feiger defended in part on the theory that his prosecution was politically motivated by Executive Branch officials who were members of the opposite political party. He was acquitted of the charges by a jury on June 2, 2009.

It appears that the FEC commenced a civil enforcement proceeding thereafter. Counsel for the plaintiff reported at oral argument that the civil matter was resolved in October 2009 and made public the next month.

The record suggests that the law firm then began a campaign to gather records relating to communications between the FEC and then-White House officials, especially Executive Branch political operatives and appointees, to determine if undue influence was exerted over the election law enforcement agency. The law firm accused the Bush Justice Department of conspiring with the FEC to politicize the enforcement of federal campaign finance laws. The first formal request for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, came from attorney Michael Deszi, who was a member of the Feiger law firm at the time of his request but who had not joined the firm until March 2006, after the raid. Deszi wrote a letter to the FEC on July 3, 2008, which read:

Dear Ms. Salley:

Pursuant to the Freedom of Information Act, I am hereby requesting the following:

1. Any and all documents of any kind, including, but not limited to, memoranda, correspondence and e-mails dated from January 2001 through the present between officials, agents and/or employees of the FEC and officials, agents and/or employees of the Department of Justice relating to possible violations of the Federal Election Campaign Act by the law firm of Fieger, Fieger, Kenney & Johnson, P.C., including its partners, employees, contractors, associates, and their children and spouses.

2. Any and all documents of any kind, including, but not limited to, memoranda, correspondence and e-mails dated from January 2001 through the present between (to/from) FEC officials, employees or agents, including former FEC Chairman Michael E. Toner, and White House officials, employees or agents, including former White House Aide Karl Rove and former White House Counsel Harriet Miers, or their agents and/or assistants, relating in any way to enforcement of federal criminal statutes, including, but not limited to, the Federal Election Campaign Act.

I look forward to your prompt response consistent with the requirements of the Freedom of Information Act. Please do not hesitate to contact me with any questions. Thank you for your kind attention to this matter.

> Very truly yours,
> FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, PC
> /s/ Michael Deszi

On October 27, 2008, Mr. Dezsi sent a second request to the FEC for additional documents, which read as follows:

Dear Ms. Salley:

Pursuant to the Freedom of Information Act, I am hereby requesting the following:

1. Any and all documents of any kind, including, but not limited to, memoranda, correspondence and e-mails dated from January 2001 through the present between (to/from) FEC officials, employees or agents, including former FEC Chairman Michael E. Toner, and White House officials, employees or agents, including former White House Aide Karl Rove and former White House Counsel Harriet Miers, or their agents and/or assistants, including any and all present and/or former employees and/or agents of the Executive Office of the President and/or Vice President.

> I look forward to your prompt response consistent with the requirements of the Freedom of Information Act. Please do not hesitate to contact me with any questions. Thank you for your kind attention to this matter.
>
> Very truly yours,
> FIEGER, FIEGER, KENNEY, JOHNSON
> & GIROUX, P.C.
> /s/ Michael R. Dezsi

The FEC received the first request on July 9, 2008 and notified Mr. Deszi on September 30, 2008 that it had completed its search for and review of documents. The FEC received the second request on November 3, 2008 and requested several extensions. It did not complete its review until June 2009, when it notified Mr. Dezsi of that fact.

Apparently dissatisfied with the response (or lack of one), the plaintiff filed his complaint in this case on September 25, 2008. As is evident from the case caption, the case was filed in the name of plaintiff Geoffrey Feiger. The FEC filed its answer on October 29, 2008 asserting, among other things, that Feiger never requested documents either personally or through Mr. Dezsi in a representative capacity, and alleged that the Court lacked subject matter jurisdiction over the dispute. On November 19, 2008, Mr. Dezsi sent a third letter to the FEC explaining that he had been acting on behalf of Feiger and explaining that his requests were made as Feiger's attorney. The plaintiff filed an amended complaint on February 19, 2009 to include within the lawsuit the documents requested in the October 27, 2008 letter.

The plaintiff now asks the Court to order the defendant to provide all relevant documents, expedite the proceedings under 28 U.S.C. § 1657, and award him costs and attorneys fees pursuant to 5 U.S.C. § 552(a)(4)(E). The defendant filed a motion for summary judgment on September 7, 2009, arguing that the plaintiff lacks standing, the agency made a good-faith effort to locate the requested items, the case is moot because the plaintiff has not challenged any of the withholding

determinations, and non-production of certain documents is justified by certain statutory exemptions. The Court heard oral argument on February 23, 2010.

## II.

The Freedom of Information Act (FOIA) "was designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)); *see also Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir. 1998); S. Rep. No. 89-813, at 38 (1965) ("Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both." (quoting James Madison)). Therefore, "upon any request for records which (I) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, [federal agencies] shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

When a requesting party is denied access to records, that person may turn to the courts for relief. As the Supreme Court explained, "the Freedom of Information Act creates a private cause of action for the benefit of persons who have requested certain records from a public agency and whose request has been denied. 5 U.S.C. § 552(a)(3). The statute requires nothing more than a request and the denial of that request as a predicate to a suit in the district court." *United States v. Richardson*, 418 U.S. 166, 204 (1974). However, "a person whose name does not appear on a request for records has not made a formal request for documents within the meaning of the statute. Such a person, regardless of his or her personal interest in disclosure of the requested documents,

has no right to receive . . . the documents." *McDonnell v. United States*, 4 F.3d 1227, 1236-37 (3d Cir. 1993) (citations omitted).

It logically follows, then, that a person whose name does not appear on a request for records has no standing to prosecute a lawsuit to compel disclosure of those records. That is because "[a] 'case or controversy' conferring standing arises only when a person makes a request for information under the FOIA and the petitioned agency denies that request." *Id.* at 1238.

Standing is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution. It is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). There are three constitutional requirements for standing. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 225-26 (2003); *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007). "To establish Article III standing, a litigant must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision." *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing requirements. *See City of Cleveland*, 508 F.3d at 835. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of

third parties." *Warth*, 422 U.S. at 499 (citations omitted). Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. *Coal Operators*, 291 F.3d at 916 (citing *Valley Forge*, 454 U.S. at 474-75). Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Ibid.* "These additional restrictions enforce the principle that, 'as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Coal Operators*, 291 F.3d at 916 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991)).

It is not possible to discern from the two letters Mr. Dezsi sent to the FEC a request for documents by or on behalf of plaintiff Feiger. Feiger did not sign the letters, and nowhere in either letter is there a statement or suggestion that Mr. Dezsi was making the requests on Feiger's behalf. Nor does the context of the request compel an inference that the true requesting party is plaintiff Feiger himself. The letters were written on law firm letterhead, but the circumstances leading to the FOIA request could make nearly all the firm employees interested parties. Of course, a personal interest in the events is not necessary to justify a request for information. "Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances – why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose – are irrelevant to his standing." *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006); *see also Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding that refusal to disclose records under FACA constituted sufficient injury to bestow standing, similar to "when an agency denies requests for information under the Freedom of Information Act"). However, there must be an identity between the requesting person and the

party bringing the lawsuit. "Although 'the identity of the requester' is generally 'immaterial' to 'the exercise of the rights provided by the Act,' ' the nature of an entity *suing* under the FOIA is not without relevance . . . .'" *Feinman v. FBI*, --- F. Supp. 2d ---, 2010 WL 276176, at *3 (D.D.C. Jan. 26, 2010) (citing *Military Audit Proj. v. Casey*, 656 F.2d 724, 730 n.11 (D.C. Cir. 1981) (emphasis added)).

A plaintiff who has neither made a request for information on his own nor explicitly through counsel cannot show an injury in fact, which is a necessary constitutional requirement of standing. Moreover, a plaintiff who bases a FOIA lawsuit upon the request for information by another person does not satisfy the prudential requirement that he must assert a violation of his own legal rights. A plaintiff who establishes Article III standing requirements faces the additional "rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth*, 422 U.S. at 499). There is an "exception" to this rule when "the party asserting the right has a 'close' relationship with the person who possesses the right," and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* at 130. The "close relationship" element requires consideration of whether "'the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'" *Powers v. Ohio*, 499 U.S. 400, 413 (1991) (quoting *Singleton v. Wulff*, 428 U.S. 106, 115 (1976)). The weight of authority cuts against recognizing third-party standing in the FOIA context, even when the request is made by a lawyer, in the absence of a clear statement that the request is being made on behalf of a named client.

In *McDonnell v. United States*, the Third Circuit held that a "passing reference" to the plaintiff's name in the FOIA request was insufficient to confer standing. The reference to the plaintiff in that request did "not sufficiently identify him with the person making the request to confer on him standing to challenge the denial of the request under FOIA." *McDonnell*, 4 F.3d at 1238 n.6; *see also Mahtesian v. U.S. Office of Pers. Mgmt.*, 388 F. Supp. 2d 1047, 1048-49 (N.D. Cal. 2005) (discussing *McDonnell*). The *McDonnell* court drew support for this conclusion from the legislative history of FOIA, which the court read as demonstrating "Congress's intent to identify the person making the request with the person aggrieved when a request is denied." *McDonnell*, 4 F.3d at 1236-37.

The plaintiff argues here that Mr. Dezsi obviously was acting as counsel in a representative capacity, and attorneys frequently make FOIA requests on behalf of clients. He says that when investigating potential claims against governmental entities, FOIA is a common pre-suit device for obtaining information for a client's nascent cause of action. True enough. But federal FOIA jurisprudence leaves no doubt that a lawyer's request for information must plainly spell out the representative capacity and the identity of the client before that client can bring a FOIA action in her own name. When an attorney files a FOIA request on behalf of a client, the attorney is the one to whom courts have granted standing to sue. *See Constangy, Brooks & Smith, by Bridgesmith ex rel. Teledyne Indus., Inc. v. NLRB*, 851 F.2d 839, 840 n.1 (6th Cir. 1988) (noting that the plaintiff, a law firm, had standing to request the FOIA documents on behalf of its client); *see also Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1291 (D.C. Cir. 1998); *Unigard Ins. Co. v. Dep't of Treasury*, 997 F. Supp. 1339, 1341 (S.D. Cal. 1997) (holding that when attorney representing Unigard submitted a FOIA request in his own name, Unigard lacked standing because

its name did not appear on the request itself) In *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1 (D.D.C. 2005), for example, the court denied standing where the lawyer had identified his client by name, but did not assert that the request was being made "on behalf of" that client. *Id.* at 2. After discussing these cases, the court in *Mahtesian v. U.S. Office of Personnel Management* concluded that "reference to an anonymous [or named] client in a FOIA request[] can not, alone, confer standing on that client, any more than a reference to an anonymous [or named] person in a complaint could, by itself, confer standing on that person." 388 F. Supp. 2d at 1050.

The plaintiff states that the representative capacity was made very clear in Mr. Dezsi's November 19, 2008 letter. However, Mr. Dezsi did not send that letter until after the complaint in this case was filed. "Jurisdiction, including standing, is '"assessed under the facts existing when the complaint is filed."'" *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001)); *see also Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir. 1970) ("The general rule is that federal jurisdiction is tested according to the facts as they exist at the time an action is initiated"). Developments occurring after the lawsuit has been filed cannot confer standing that did not exist when the case was commenced.

III.

The requests for information dated July 3 and October 27, 2008 would have supported a FOIA claim by Mr. Dezsi, and perhaps even by the Feiger law firm. However, because there is no evidence presented that the named plaintiff ever requested information from the FEC, or that information was requested on his behalf, Article III standing has not been established. The Court, therefore, has no subject-matter jurisdiction over the dispute in this case.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt #41] is **GRANTED IN PART**.

It is further **ORDERED** that the matter is **DISMISSED** for want of subject-matter jurisdiction.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 26, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO